ALBANY,
February, 1809.

URQUHART *against* M'IVER and others.

THIS was an action of *assumpsit*. Plea, the general issue. A verdict was taken for the plaintiff, at the *sittings* in *New-York*, subject to the opinion of the court on a case containing the following facts :

The plaintiff being owner of a ship called the *Nancy*, lying at *Wilmington*, *N. C.* taking on board a cargo for *Liverpool* in *England*, where the defendants carried on trade, on the 17th *May*, 1803, wrote a letter to the defendants, informing them that the ship would be dispatched to *Liverpool* to their address, that he had drawn bills on them for 1,350*l.* sterling, and requesting them to have insurance made on the ship, in *London*, or such other place in *Great-Britain* as might be convenient, valuing her at 1,200*l.* sterling, his part of the *cargo* at 304*l.* and the *freight* at 1,280*l.* that he should send to them a power of attorney to sell the ship, as he meant, at all events, to make them safe in the acceptance and payment of the bills, and believing the ship and cargo would be in their possession, before the bills were presented for acceptance.

This letter was received by the defendants, on the 23d *July*, 1803 ; and before any other letter or communication was received from the plaintiff, they, on the same day, wrote a letter to the plaintiff, acknowledging the receipt of his letter of the 17th *May*, inclosing an invoice and bill of lading, for timber and staves, on board the *Nancy*, which had not then arrived ; but that they had effected the insu-

Where A. of *Wilmington*, *N. C.* wrote to B. in *Liverpool*, inclosing an invoice and bill of lading of a cargo consigned to him, and informing him that he had drawn bills to a certain amount, and B. in his answer, agreed to receive the consignment and accept the bills, but, afterwards, refused one of the bills, which was returned protested, it was held, that B. was answerable to A. for all the damages and costs, paid by him on the protested bill.

Where A. consigned a vessel and cargo to B. at *Liverpool*, and advised him that he should make him secure for the acceptance of his bills, and sent him a power of attorney to sell the vessel, with directions to sell her in *England*, but if that could not be done, to procure a freight, or load

her with as much *salt* as the funds of A. were equal to, and send her to *New-York* ; and B. loaded the vessel with *coals*, and having, under the power from A. executed a bill of sale of the vessel to C. of *New-York*, and sent the vessel and cargo to C. with directions to reconvey and deliver them to A. on his paying the balance due to B. for advances, otherwise, to sell them and place the proceeds to the credit of B. paying over the balance that might remain to A. who was also informed by B.'of the transfer and consignment to C. A. refused to accept the vessel and cargo from C. contending that B. had made the vessel his own. It was held, that B. not having followed the orders of A. in relation to the *cargo*, it belonged to B. and that A. was not bound to accept it, nor liable for any charges attending it ; that the vessel being intended as security to B. he had a *lien* upon her for his advances, and that the assignment to C. being merely for the purpose of preserving that *lien*, and not an absolute sale, A. was bound to accept the ship, and pay the premium of insurance, and all the advances made by B. for repairs, &c. Though a *factor* cannot *pledge* the goods of his principal as *his own*, yet he may deliver them to a third person as security, with notice of his *lien*, and as his agent to keep the possession for him, in order to preserve that *lien.*

rance on the ship, cargo, and freight, in all 2,784*l.* at three guineas per cent. and that they should accept the plaintiff's bill when offered.

On the 31st *May*, 1803, the plaintiff wrote a second letter to the defendants, by the ship, inclosing a power of attorney to sell the ship, observing, that if the prices quoted should continue, he had little doubt that the ship would make a handsome freight, but that it rested with the defendants to make the most of matters for his interest; that if they should fail in making sale of the ship, to his advantage, he wished her to be ballasted with salt, and that they would endeavour to get all the freight they could for *New-York*, and dispatch her there with the utmost speed, making insurance as ordered, &c. and give him notice, &c. mentioning a balance of 70 or 80 pounds due to him in *London*, which he should direct to be paid to the defendants; that if the ship was sold to return to *America*, the crew were bound by the articles to return in her, &c. and that he inclosed an act of congress in that case.

The *Nancy* arrived at *Liverpool*, the 24th *July*, 1803; and, on the 25th *July*, the defendants wrote to the plaintiff, acknowledging the receipt of his last letter, and the arrival of the ship, and declaring that they should attend to his directions respecting the ship and cargo, but were apprehensive that the ship could not be sold; that the bills had not appeared, but would be honoured when presented, &c.

On the 10th of *June*, 1803, the plaintiff wrote to the defendants, that he had drawn three bills on them, amounting to 1,350*l.* sterling, agreeably to his letter of the 17th *May*.

On the 9th *July*, 1803, the plaintiff again wrote to the defendants, that, if the ship could not be sold, agreeably to his orders, they must ballast her with salt, and set her up for freight for *New-York;* and that if a freight could be procured, not to ship salt; otherwise, to ship as much salt, as his funds would permit, or the vessel could carry with ease; and that, instead of insuring the ship and his property, and the freight as formerly directed, the defendants should advise *R. Wilkins*, of *New-York*, of the amount

shipped, and the freight, to regulate him in making the insurance at *New-York*, which charge as to the insurance, the plaintiff said, procceded from a fear that his funds would not be sufficient to ballast the ship with salt, and pay the premium of insurance there, in case no back freight offered.

The defendants received and disposed of the cargo at *Liverpool*, and credited the plaintiff with the proceeds, amounting to 1,092*l.* 15*s.* 10*d.* sterling, and with the freight to *Liverpool*, being 251*l.* 10*s.* 6*d.* The disbursements made by them for the vessel amounted to 537*l.* 11*s.* 4*d.* and they accepted two of the plaintiff's bills, amounting to 900*l.* but the third bill for 450*l.* being presented, the defendant answered, that it could not then be accepted, but would probably be paid when due. It was protested for nonacceptance, on the 18th *August*, and for non-payment on the 19th *November*, 1803.

The ship could not be sold to advantage in *Liverpool*, and no freight could be obtained for *New-York*. The defendants shipped on board salt and coal, to the amount of 295*l.* 10*s.* 8*d.* sterling, and, to secure themselves for their advances and acceptances, consigned the same to *Lenox &* *Maitland*, in *New-York*, on account of the plaintiff, and as attornies for the plaintiff, executed to *Lenox & Maitland* a bill of sale of the ship, for the consideration of 1,000*l.* sterling, which was not actually paid, the bill of sale and consignment being intended for their security.

On the 12th *September*, 1803, the defendants wrote to the plaintiff, advising him of what had been done; that their disbursements, the salt, and coal, and insurance, &c. to *New-York*, amounted to 888*l.* 1*s.* 5*d.* that, after paying the drafts of the plaintiff to 1,350*l.* there would be due to the defendants a balance of 1,020*l.* 18*s.* 2*d.* to secure which they had sold the ship to *Lenox & Maitland*, and consigned the salt and coal to them for sale, and they hoped, that after these were sold, the plaintiff would have little to pay be

sides, and take back his ship; that they should have a small account further against him for advances, &c.

The defendants, on the 13th *September*, 1803, wrote to *Lenox & Maitland*, inclosing the invoice and bill of lading for the salt and coals, and informing them that the cargo was shipped on account of the plaintiff; but as the funds arising from the sale of the outward cargo were not sufficient to pay his drafts, the disbursements on the ship, and for that cargo, they had, under a power of attorney, assigned the ship to them, and, if the plaintiff reimbursed them, they were to convey the ship to him; that the salt and coals were to be sold, and the proceeds credited to the defendants; and that, if the plaintiff did not pay or secure the balance, then *Lenox & Maitland* were to sell the ship, and place the proceeds to the credit of the defendants, paying over the balance to the plaintiff.

The ship and cargo, on the return voyage, were insured at *Liverpool*, and the defendants paid the premium. The ship, on her voyage, was damaged by the perils of the sea, and was obliged to return to *Liverpool* for repairs. The further expenses of repairs amounted to 582*l.* 11*s.* 1*d.* sterling, of which the defendants, in a letter of the 5th *November*, 1803, to the plaintiff, advise him, and add, that they hope to recover part of these expenses from the insurers, though they seemed disposed to resist the payment, on the ground that the ship was not seaworthy; and that the advances on account of the last disaster prevented them from paying the plaintiff's draft for 450*l.* due on the 2d of *November*, as they intended to have done when they wrote in *September*.

On the 6th *November*, 1803, the vessel sailed again from *Liverpool*, and arrived at *New-York*, on the 27th *December*, 1803. On the 29th *December*, *Lenox & Maitland* wrote to the plaintiff, informing him of the fact, &c. and hoping that the demand of the defendants would be liquidated, so that they might restore to him the vessel.

By consent of the plaintiff, the vessel and cargo were sold, without prejudice, for 3,863 dollars and 93 cents. The

plaintiff insisted, that the defendants had made the vessel their own, and refused to take her and the avails of the cargo, and to pay the demand of the defendants. The plaintiff paid the bill of 450l. which had been protested, with damages and interest. By the transfer of the ship to *Lenox & Maitland*, the register of the ship was not lost, nor any forfeiture incurred.

It was agreed, that if the court should be of opinion, that the plaintiff was entitled to recover, that they should ascertain the damages, or fix the principles on which they were to be computed, and appoint a suitable person to make the computation, and if, on the principles established, a balance appeared to be due to the defendants, a judgment was to be entered accordingly.

*Sampson*, for the plaintiff. 1. By accepting the consignment, the defendants were bound to accept and pay the bills drawn on them by the plaintiff; they are therefore, responsible for the damages and costs on the bill which was protested.* 2. The defendants, as agents and factors, were bound to pursue the orders of the plaintiff. Factors are obliged strictly to observe the orders of their principal.† The least deviation renders them liable for the consequences. Where the authority of the agent is limited, and he exceeds that authority, the principal is not obliged to accept of the contract he has made, but may throw the goods on the hands of the factor.‡ Here the defendants were directed to sell the ship in *England*; but if that was impracticable, they were to ballast her with salt, procure a freight, and send her back to *New-York*; or in case no freight offered, to load her with as much salt as the funds of the plaintiff were equal to purchase. They had no authority to create any new debt, or to make the plaintiff responsible beyond the funds in their hands. By his letter of the 9th *July*, 1803, the plaintiff expressly directed the defendants not to insure, but to give advice to Mr. *Wilkins*, of *New-York*, to insure her, in case the vessel was sent back; and this direction was given, for fear his

* 6 *East*, 34.
3 *Burr*. 1672.

† *Malyne's Lex Merc.* p.81. s.16. p. 86. s. 64. 2 *Term Rep.* 187.

‡ *Le Guen* v. *Gouverneur & Kemble*, 1 *Johns. Cases*, 438. and in note. 1 *Ves.* 509.

funds in *Liverpool* would not be sufficient to pay the premium there.   3. The defendants by loading the vessel, by causing her to be insured at *Liverpool*, and in giving no advice to Mr. *Wilkins*, entirely deviated from their orders.   They have, by their unauthorised conduct, made the vessel their own, and are answerable to the plaintiff for her.   The plaintiff had a right to abandon the vessel to the defendants, and hold them responsible for her full value, or at their own valuation.   The defendants having ·· *2 Vesey*, 259.   made themselves liable as insurers,* have no right to charge the plaintiffs for the premiums they have paid. The defendants had authority merely to sell the ship at *Liverpool;* if they did not think best to exercise that authority there, they had no power to dispose of her in any other way.   A factor can sell only according to his authority; he cannot, under his general authority, sell on credit, † 12 *Mod.* 514, nor to persons beyond sea.†   Nor had the defendants any 515. *Yelv.* 202. *Bulst.* 103. right to pledge the vessel, or assign her, by way of security, to *Lenox & Maitland*.   It is beyond the scope of a factor's ‡ 6 *East*, 41. authority, to *pledge* the goods of his principal.‡ *Newson* v. *Thornton.*   4. The defendants by their departure from the orders of the plaintiff, and their neglect and misconduct as factors, are responsible for all the damages which have resulted from the measures they have pursued.

*T. L. Ogden* and *Colden*, contra.   The principles of law which have been stated relative to the duties of factors, are not disputed.   They are not applicable to the present case, which does not depend on any general rules, but on the terms of the contract between the parties.   The conduct of the defendants is to be considered in two points of view: first, in regard to the ship; second, as it respects the cargo.   Any neglect as to the cargo, would not authorise an abandonment of the ship.   The letter of the defendants, of the 23d *July*, 1803, contains their acceptance of the plaintiff's consignment, agreeably to his letter of the 17th *May*.   From these two letters, the rights and duties of the parties are to be collected.   They constitute the

contract between them. By the terms of these letters, the defendants acquired a *lien* on the ship and freight, as a security for their acceptances, and for all their advances and disbursements relative to the ship and cargo.* It will be seen from the accounts exhibited, that when the ship was dispatched from *Liverpool*, the defendants had advanced 1,090*l.* sterling. It appears that the ship could not be sold in *Europe*, and the plaintiff, in his letter of the 29th *May*, says, that if the ship could not be sold to advantage, she was to be sent back. The defendants had discretionary powers to act as they thought most for the advantage of the plaintiff. The defendants must have either sacrificed the ship by a sale in *England*, or have sent her back. They preferred the latter, as most for the interest of the plaintiff. The vessel was sent back, with the *lien* of the defendants, thereby securing themselves, and pursuing the orders of the plaintiff. Under their power, they assigned the ship to *Lenox & Maitland*, with directions to deliver her to the plaintiff, on his paying the balance due to the defendants. This was a sale in *form* only; an expedient to preserve the *lien* of the defendants, and for the benefit of the plaintiff. It was not a *pledge* of the plaintiff's property. *Lenox & Maitland* were merely constituted the agents of the defendants, for the purpose of preserving their security on the vessel. Such a transfer, merely to preserve the *lien* of the defendants, is not a *tortious* act, which makes them answerable for all consequences.†

Again, the defendants did not send the vessel beyond sea, but home to the plaintiff, on his paying the balance due to them. When the vessel sailed from *Liverpool*, she was, in fact, the property of the plaintiff, who must be answerable for all the repairs, which, afterwards, became necessary. All the letters of the plaintiff show that the defendants were to be made secure, at all events, for all their advances. If they had advised *Wilkins* to insure at *New-York*, and the vessel had been lost during the voyage, they would have lost their security. The insurance may have been made under the first orders, and if so, the defendants

* 2 *East,* 227.

† *M'Combie* v. *Davies,* 7 *East,* 5. 7.

are entitled to the premium. It is true, they were bound to accept the bills, and they may, perhaps, be liable for the damages on the one protested. Had the defendants been limited strictly to the funds of the plaintiff, the vessel would have returned empty. Some cargo was necessary to ballast the ship, and what was done was intended for the benefit of the plaintiff. By loading her with coal instead of salt, the defendants have rendered themselves liable only for the difference between the freight and profit of the two articles, if there is any difference.

*Harison*, in reply. The defendants by accepting the consignment, became bound to pursue the orders of the plaintiff. By sending the vessel to *New-York*, in the manner they have done, the defendants have parted with their *lien ;* they had no authority to send her to any one but the plaintiff, or to such person as he might designate. The defendants could not *sell*, or *pledge* their *lien*, nor could they send the subject abroad, without losing their *lien*. Having undertaken to load the vessel and send her away, contrary to the plaintiff's orders, they must be deemed the owners. The plaintiff had a right to abandon her to the defendants. The acts of the defendants furnish the strongest evidence of ownership ; and their letters to *Lenox & Maitland*, show that they intended a sale, though they gave an option to the plaintiff, to take the vessel, if he thought proper. The power of a factor over his *lien*, can never authorise such a disposition of the property. The case of *M'Combie* v. *Davies* was very different. As this disposition of the vessel was made, before she met with the disaster which obliged her to return to *Liverpool*, the defendants are responsible for all the expenses of repairs ; since they have by their conduct made the vessel their own. If the vessel is to be considered as belonging to the defendants, they must also be regarded as owners of the cargo.

SPENCER, J. The plaintiff in this case claims from the defendants ; 1. The damages, interest and costs on the pro-

test of a bill of exchange for 450*l.* sterling, drawn by the plaintiff, at *Wilmington*, in *North-Carolina*, upon the defendants, residing at *Liverpool*, in *England*, and which bill the defendants, by their letter to the plaintiff, had agreed to accept, in consideration of the plaintiff's having consigned to them a ship and cargo.

2d. The price for which the defendants sold the ship *Nancy;* and 3d, to be exempted from the premium of insurance made on the ship, goods, and freight from *Liverpool* to *New-York,* as also the amount paid by the defendants for the return cargo, being salt and coals, and also the amount of repairs and other expenses, subsequent to the sale of the ship by the defendants to *Lenox & Maitland.*

The defendants' liability to the damages, interest and costs attending the protest for non-acceptance of the bill for 450*l.* sterling, is very properly admitted, and it is, therefore, unnecessary to examine the facts, or the law, as applicable to that point.

That the defendants had a *lien* on the cargo consigned to them, and its proceeds, with a *lien* also on the proceeds of the ship, when sold under the authority conferred by the plaintiff, to the extent of their acceptances and disbursements on the plaintiff's account, cannot be questioned. The only question is, whether the defendants have pursued such a course as the general duties of factors require, in relation to the sale of the ship, and so as to preserve their *lien* on the actual proceeds of the sale of the ship by their agents, *Lenox & Maitland.*

If the line of conduct they have observed, made the ship their own, after the transfer of her to *Lenox & Maitland,* it will then necessarily follow, that they have no right to charge the plaintiff with the premium of insurance on the voyage from *Liverpool* to *New-York,* with the amount of the return cargo, or for the repairs and disbursements incurred, after the sale to *Lenox & Maitland.* It is a rule which has been repeatedly recognised in this court, that a factor cannot pawn the goods of his principal. It is a principle so well settled in the *English* courts, and so firmly esta-

blished with us, as to render it wholly unnecessary to cite au*thorities in support of it.

A *lien* appears, by all the cases, to be a personal right, and can endure no longer than the possession of the party hold*ing it continues. The authority given by the plaintiff to the defendants, to sell, did not divest the plaintiff's right of property ; at most, it was an authority coupled with an interest in the proceeds, and this authority was exerted by the sale to *Lenox & Maitland*. It has been urged, on the part of the defendants, that this was merely a mode adopted to preserve their *lien* on the proceeds of the sale, and was not incompatible with the authority vested in them to sell the ship, by way of securing themselves for the responsibi*lities they had incurred. It seems to be a controverted point in the *English* courts, " whether or not a *lien* might follow goods in the hands of a third person to whom it was delivered by the party having the *lien*, purporting to transfer his right of lien to the other as his servant, and in his name, and as a continuance, in effect, of his own possession."*

* 7 *East*, 6.

In the present case, the *lien* was to be acquired by the act of sale only ; for until a sale took place, the right of the de*fendants was merely potential. It has been supposed that the ship itself was put into the possession of the defendants, as a security for their accepting the drafts ; this, in my opi*nion, is neither warranted by the case, nor is it reconcila*ble with some of the defendants' acts. In the plaintiff's let*ter of the 17th of *May*, 1803, he says, " the ship will be dispatched to your port to your address ;" again, " I shall send you a power of attorney to make sale of her, as I mean at all events to make you safe in the acceptance and pay*ment of the bills ;" and again, " thus, I flatter myself, the ship and cargo will be in your possession before you are call*ed on for acceptance." The possession of the ship here spoken of, evidently means such a possession only as would arise from her being addressed to the defendants with a power to sell, and so the plaintiff must have intended, when he makes the possession in the defendants to be the conse*quence of these two acts. The actual possession never was

in the defendants prior to their sale; and until the power was executed by a sale, the defendants could have had no legal right to take possession of or to detain the ship. The defendants' refusal to accept one of the bills, can be imputed to nothing else than an apprehension on their part, that the funds in their hands were not an adequate security, but if the ship unsold was in their possession, and they had a *lien* on her, there can be no pretence of a want of security.

The power to sell did not admit of a mere formal transfer, for the express purpose of gaining a *lien* on the proceeds, but was alone to be fulfilled by a real, actual, and substantial sale. The sale, therefore, completely divested the plaintiff's right of property, and from that moment he had a right to *debit* the defendants with the price specified in the bill of sale.

The defendants are not chargeable with any *mala fides*. Their conduct appears to be fair; but if they are not to be considered as the real owners of the ship, through the medium of their trustees, *Lenox & Maitland*, they have grossly disobeyed their orders in respect to the return cargo.

The property of the ship being, as I conceive, changed by the act of sale, there exists no right to charge the plaintiff for the premium, the return cargo, or the repairs, nor for any thing on, or towards the ship, after the plaintiff's interest in her ceased.

In my judgment, a liquidation must take place on the principles resulting from this opinion.

YATES, J. was of the same opinion.

KENT, Ch. J. Upon the facts contained in the case, the court are called upon to ascertain and prescribe the principles, upon which the accounts and claims between the parties are to be liquidated or adjusted.

1. The plaintiff claims compensation for the injury he received by the non-acceptance and payment of the bill of exchange for 450*l.* sterling. By his first letter of the 17th *May*, he informed the defendants that the ship and cargo

would be consigned to them, and that he should anticipate the avails of the cargo and freight, by drawing upon them to the amount of the three bills. The defendants received this letter, together with the invoice and bill of lading, and agreed to accept the bills. This acceptance of the consignment bound them to pay the bills. This point seems to be well understood and settled; (*Buller*, J. in 6 *East*, 34.) and the counsel for the defendants admitted, upon the argument, their responsibility to indemnify the plaintiff for the non-acceptance and non-payment of the third bill. This indemnity consists in refunding to the plaintiff the 20 *per cent.* damages which he paid on the return of the bill, the costs attending the same, including the costs of the protest, and interest upon the damages and costs so paid from the time they were paid.

2. As to the return *cargo* from *Liverpool* to *New-York.* The coals were never ordered. In shipping them, the defendants clearly exceeded their special and limited powers, and the plaintiff was not bound to accept of them. The *salt* was ordered by the letter of the 31st of *May;* but the defendants consigned it to their agents at *New-York,* with unqualified orders to sell it. This was exercising ownership over it, inconsistent with their powers and duty, as factors; and the plaintiff had his election not to accept of the proceeds of the salt, so placed and disposed of without his consent or controul. He did refuse to have any thing to do with the proceeds of the cargo, and, consequently, the cargo and the premium paid at *Liverpool* for insuring it, are not to be charged to him.

3. The next and most important point respects the *ship.* By the first letter of the 17th of *May,* 1803, the plaintiff gave notice to the defendants, in general terms, that he should send them a power of attorney to make sale of the ship, because, he said, that he meant, at all events, to make them safe in the acceptance and payment of the bills. By his next letter of the 31st of *May,* the plaintiff directed the defendants to cause insurance to be made upon the ship for the return voyage, and this insurance was effected accordingly,

on the 12th of *September* following. The plaintiff did, indeed, by his letter of the 9th of *July*, countermand those orders, for the insurance in *England*, and gave notice that he intended that the insurance on the return voyage should be made at *New-York*. But we have no evidence that this letter was received, prior to the 12th of *September ;* and, from the correspondence, I think it is fairly to be inferred, that it was not received. It was incumbent upon the plaintiff to make out, affirmatively, the fact, that these subsequent orders were received in time by the defendants. From the omission of the plaintiffs to do this, we are bound to conclude, that the insurance at *Liverpool* upon the homeward voyage, was duly and authoritatively made. The defendants had *a lien* upon the ship, for their advances and responsibilities. The ship was dispatched to their *address*, and by the letter of the 17th of *May*, the plaintiff said, he flattered himself the ship and cargo would be *in possession* of the defendants, before they were called upon for acceptance. The plaintiff, therefore, intended that the ship should be placed in their possession, as a pledge of their indemnity, or, as the plaintiff said, to *make them safe* in the acceptance and payment of the bills ; and from the terms of the first letter, we have reason to conclude, that the power was general, and not restricted to any particular place, though the subsequent letters do, undoubtedly, contemplate, that the sale, if made at all, was to be made at *Liverpool.* But the letter of the 31st of *May* supposes a power in the defendants to sell the ship to return to *New-York ;* for it says, " if the ship be sold, to return to *America.*" Here was then a sale contemplated *for the American market,* if not a sale to a person residing in *America.* Considering the object of the power to sell, and the probable generality of the terms in which it was expressed, the exercise of it, if made in good faith, ought to be construed very liberally in favour of the defendants. But the sale to *Lenox & Maitland* was not an absolute sale. It was, in effect, only a transfer of the *lien* to *Lenox & Maitland*, as agents of the defendants, and with an intent to facilitate a settlement with the plaintiff. Whatever might be the form

of the sale, it was understood and declared, both by the defendants and their agents, to be a mere deposit of the *lien* in their hands, on behalf of the defendants. Under such circumstances, I do not consider this as a tortious conversion of the subject, nor a parting with the possession of the *lien*. This appears to be the real intent and obvious meaning of the transaction ; and in the opinion of Lord *Ellenborough*, which seems to have been the opinion of the whole court of K. B. in the case of *M'Combie* v. *Davies*, (7 *East*, 5.) such a change of the *lien* does not divest the factor of his right. Here was no credit or imposition held out, as in the case of *Kruger* v. *Wilcox*, (*Amb.* 252.) on which Lord *Hardwicke* laid stress. A factor may deliver the possession of goods, on which he has a *lien*, to a third person, with notice of the *lien*, and with a declaration that the transfer is to such person as agent of the factor, and for his benefit. This is a continuance, in effect, of the factor's possession, and this was precisely the object of the transfer in the case before us, which is much stronger than the one supposed by the K. B. for here the factor had a general power to sell, and a power given him avowedly for his own indemnity. I see nothing tortious, nor any thing unreasonable in the manner in which the power was exercised in the present instance. What would have been the effect of an absolute sale by *Lenox & Maitland*, is a question not before us, for the one which they made was by consent of the plaintiff, without prejudice to the prior rights of the parties. We are, therefore, to consider the question, as if *Lenox & Maitland* still held the vessel, as agents for the defendants, and as ready to surrender the possession and formal title to the plaintiff, on his giving to the defendants their just indemnity.

I think, therefore, that the plaintiff is bound to take the avails of the ship, and to pay the premium of insurance, advanced by the defendants for the insurance of the ship and freight, for the homeward voyage. On the other hand, the defendants must assign over to the plaintiff the policy on the ship and freight, and account for any monies which

they have received thereon, and they must, likewise, pay for the freight of their cargo to *New-York*. As to the expenses and disbursements of the defendants, in fitting out the ship in *September*, and in repairing the damages, and fitting her out again in *November*, they are entitled to have them refunded by the plaintiff; and upon these principles, as to the points in contest between the parties, the accounts must be liquidated.

ALBANY,
February, 1809.

THOMPSON, J. and VAN NESS, J. were of the same opinion.

Judgment accordingly.