## FITZHUGH and others *against* WIMAN.

Forwarding merchants, who have made advances for prior charges on goods consigned to them to be transported and delivered to the ultimate consignees or owners, have such an interest in the goods as entitles them to maintain an action to recover the possession thereof, against a third person to whom such goods have been wrongfully delivered by the carrier.

The delivery of the goods by the consignor to the carrier in such case, under a special consignment to the forwarders, was virtually a delivery to them; the carrier being regarded as their agent to receive, transport and deliver the goods to them.

In such action, where the property prior to the time of the trial has reached the hands of the general owner, the true value to be assessed and recovered is the value of the plaintiffs' special property only, which value is ascertained from the amount advanced by them upon the property, together with the freight which would have accrued to them upon the transportation to the ultimate consignee.

In an action to recover the possession of personal property, where the property has not been delivered to the plaintiffs prior to the trial, the plaintiffs recovering have not a right to elect to take judgment for the value of the property, but are entitled only to a judgment in the alternative, that they recover possession of the property, or the value thereof in case a delivery cannot be had, together with damages for the detention thereof.

Where the plaintiffs in such an action recovered an absolute judgment for the amount of their advances and their prospective freight in one sum, being the precise amount which should have been assessed as the value of their special property, it was *Held*, that although the judgment was erroneous in form, under § 277 of the Code, a new trial was not necessary, but that the judgment might be modified by changing it into a judgment in the alternative for the recovery of the possession of the property, or of the value already assessed in case a delivery could not be had.

The terms of a bill of lading cannot be contradicted or modified by parol evidence.

ACTION to recover the possession of personal property, commenced in May, 1849. The plaintiffs were warehousemen at Oswego and common carriers upon the lakes and canals, doing business under the name of H. Fitzhugh & Co. The property in question was shipped at Chicago, by George Steel, on board the propeller Genesee Chief. Three separate bills of lading were taken, by the terms

of which the carrier agreed to deliver the goods at the port of Oswego to the consignees named in the margin, "he or they paying freight," or, as one of the bills was worded, "freight and charges." The address in the margin of the first bill was as follows:

> " John Spencer,
>           No. 8, Small Brook st.,
>                     Birmingham, England,
>           Care H. Fitzhugh & Co.,
>                               Oswego ;
>           Strachan & Scott,
>                     New-York."

Upon the second,

> " Strachan & Scott,
>                     New-York,
>           Care H. Fitzhugh & Co.,
>                     Oswego, N. Y."

And upon the third,

> " John Cummings,
>                     Albany, N. Y.,
>           Care H. Fitzhugh & Co.,
>                     Oswego, N. Y."

Steel was a warehouseman at Chicago, and while the property was in his hands charges had accrued upon it in his behalf to the amount of $51.70. This amount the plaintiffs advanced to him in consideration of his shipping the cargo through them and delivering to them the bills of lading. The plaintiffs also contracted with the consignor for the transportation of the property, at the lowest current rates of freight, from Oswego to the consignees in Albany and New-York.

The captain of the propeller, on arriving at Oswego, instead of delivering the property to the plaintiffs, to whom it was consigned, delivered it to the defendant, who was

also engaged in forwarding. The plaintiffs thereupon brought this action; but did not obtain possession of the property, as the defendant gave the requisite security, and retained and forwarded the property to the consignees in New-York and Albany.

Upon the trial before Mr. Justice ALLEN and a jury, at the Oswego circuit, in June, 1850, the foregoing facts were shown on the part of the plaintiffs, and the amount of freight which would have accrued to them upon the transportation of the property to New-York was proved at $67.69. The defendant then offered to prove by parol testimony an agreement with Steel at the time of shipping the property, that if the propeller could not conveniently get up to Fitzhugh's wharf, or deliver the property to Fitzhugh & Co., it might be delivered at any other place, or to any other persons than the consignees. This testimony was excluded by the court, and the defendant excepted. The plaintiffs obtained a judgment for $119.39, being the amount of their advances and freight together, in one sum, as damages, the judgment being entered in the same form as if the action had been for the conversion of personal property. A motion for a new trial was denied and the judgment affirmed at general term, and the defendant appealed. The cause was submitted here on printed arguments by

*Charles Rhodes* for the appellant.

*Talcott & Churchill* for the respondents.

SELDEN, J. In regard to the main question presented in this case upon the merits, which is whether the plaintiffs had such an interest in the goods as entitled them to maintain the action, I see no reason to doubt the accuracy of the conclusion arrived at by the supreme court. A contract to transport the goods from Oswego having been made by the plaintiffs

at Chicago, and advances having been made by them upon the faith of such contract, the delivery of the goods to a common carrier at Chicago, under a special consignment to the plaintiffs, was virtually a delivery to them : the master of the propeller in this case is to be regarded as the agent of the plaintiffs to receive the goods for them at Chicago and transport and deliver them at Oswego. But aside from this, the consignee of property is in law presumed to be the owner, and if they are lost *in transitu*, or diverted from their destination, suit may be brought either in his name or in that of the real owner. In this case the plaintiff had not only the rights of a consignee, but also a special property in the goods to the extent of the advances made and the profits to be realized upon them.

But it is insisted on the part of the appellant that if the plaintiffs were entitled to recover at all they were not entitled to the judgment which they obtained ; that the form of the judgment is erroneous and not warranted by law in such a case. This depends upon the construction to be given to the provisions of the Code, by which the proceedings in actions to recover the possession of personal property are regulated. Section 277 prescribes the form of judgment to be taken in this class of actions. The first branch of that section provides as follows : " In an action to recover the possession of personal property, judgment for the plaintiff may be for the possession, or for the recovery of possession, or the value thereof *in case a delivery cannot be had*, and damages for the detention." It is clear that a plaintiff in an action of this kind cannot take a judgment not warranted by this section. It becomes necessary, therefore, to put a construction upon it.

The point to be determined is whether the provision in question authorizes a plaintiff to whom the property has not been delivered, and when it appears upon the trial that the property is beyond his reach, to take judgment absolutely for its value, or whether in such cases, if he succeeds, the

judgment should be in the alternative for the recovery of the property, or of its value as assessed by the jury in case a delivery cannot be had. If the clause upon which this depends were to be interpreted with reference alone to the import of the terms used, and the grammatical construction of the sentence, there might be some difficulty in deciding this question. There are, however, other considerations, which leave little if any doubt as to what was intended. It is clear that it cannot be at the option of the plaintiff to take judgment for the value of the property when it has already been restored to him, because the statute gives this right only when a delivery *cannot be had.* How, then, is the fact that a return of the property cannot be obtained to be made to appear? No evidence on this subject can be offered to the jury, because it is wholly foreign to any issue upon which they are to pass. The fact can only be shown therefore by proof offered to the court before judgment, or by the action of the sheriff upon the execution.

If the former course was intended, what is to become of that class of cases in which the property is eloigned or removed after judgment? These cases, as well as those where the property had been without the knowledge of the plaintiff put beyond the reach of the execution before judgment, would be left wholly unprovided for. But the provision of the Code in respect to the execution in such cases would seem to settle the question as to the form of the judgment. Section 289 prescribes the form of the various executions which may be issued. Subdivision 4 of this section provides as follows: "If it (the execution) be for the delivery of the possession of real or personal property, it shall require the officers to deliver the possession of the same, particularly describing it, to the party entitled thereto, and may at the same time require the officers to satisfy any costs, damages, or rents and profits recovered by the same judgment, out of the personal property of the party against whom it was rendered, and the value of the

property for which the judgment was recovered to be specified therein, *if a delivery thereof cannot be had*," &c. This provision for an execution in the alternative, making the right to levy and collect the value of the property depend upon the question whether the property itself can be found and delivered, shows conclusively that it was intended that the judgment should be in the alternative. An execution in this form upon an absolute judgment for the value of the property could never have been authorized. A comparison of § 277 of the Code with the provisions of the Revised Statutes, for which it is substituted, leads to the same conclusion. Section 49 of the statute concerning "the action of replevin" (2 *R. S.*, 530), provides that "If the goods and chattels specfied in the declaration shall not have been replevied and delivered to the plaintiff, such plaintiff, in case he shall recover judgment upon the whole record, shall be entitled, in addition to his judgment for damages and costs, *to a further* judgment that such goods and chattels be replevied and delivered to him without delay; *or, in default thereof,* that such plaintiff do recover from the defendant the value of such goods and chattels, as the same shall have been assessed by the jury on the trial, or upon a writ of inquiry." The language of this section is too explicit to admit of any doubt whatever; the plaintiff is to have judgment for a delivery of the property, or in default thereof that he recover the value, &c.; and the execution provided for in the next section followed strictly the terms of the judgment, commanding the sheriff to deliver the property if found, *and if it could not be found*, then to levy the value, &c. Now any one who compares §§ 277 and 289 of the Code with these two sections of the Revised Statutes, must, I think, be satisfied that they were intended to receive in the particular under consideration the same construction. They provide for the same cases, and although the language varies, the general tenor of the provision is in all respects the same.

I cannot resist the conclusion, therefore, that in this species of action, judgment for the value of the property can only be taken in connection with a judgment for the recovery of the possession, as an alternative depending upon the ability of the sheriff to find and deliver the property itself upon the execution. If the judgment had been in this respect in proper form, it could not have been objected by the defendant that the recovery was limited to the amount of the advances, together with the profits which would have accrued upon the transportation of the property. The plaintiffs were not the general owners, but had a special property only, and the amount recovered seems to be precisely that to which the plaintiffs would have been entitled as the value of their special and limited interest in the goods; and as it appears in the case that the goods themselves have been transported and delivered to the ultimate consignees, the objection to the judgment is reduced to one of form merely; as the value of the property should under the circumstances have been assessed at the same sum which the plaintiffs have recovered under the name of damages.

There is no reason therefore, as the merits are wholly with the plaintiffs, for sending the case back for a new trial; but the judgment should be modified and made to conform to the provisions of the Code, by changing it into a judgment in the alternative for a return of the property, or for its value in case a return cannot be had; the amount assessed as damages for the plaintiffs' advances and profits to be taken as such value. No costs should be allowed to either party in this court, but the plaintiffs' costs in the supreme court should be included in the judgment.

JOHNSON, J. The contract of the master of the vessel was for transportation to and delivery at Oswego, and the only legitimate construction of the bills of lading is, that the delivery at Oswego was to be to the consignees named

there. As to the further destination of the property, the bills of lading imposed no obligation upon the vessel or the master, nor conferred upon him any authority. His rights and his duties were merely to make delivery according to the bills of lading, he receiving the freight and charges specified.

As to the contract for transportation, a bill of lading is like any other contract in writing, and cannot be altered or contradicted by parol. As to the quantity of property acknowledged by it to have been received, it has been sometimes held to be open to explanation, as a receipt. But the cases have never gone to the extent of holding that the agreement between the parties, as to the destination of the property, or the freight to be paid, or any other of the terms of the contract for carriage, could be varied by parol. The judge, at the trial, therefore, ruled correctly in rejecting the defendant's offer to show by parol an agreement with Steel, that if the propeller could not conveniently get up to Fitzhugh's wharf, or deliver the property to Fitzhugh & Co., it might be delivered to any other persons or at any other place. Even if Fitzhugh & Co. had refused to receive the property, or declined to pay the vessel's lien upon it for freight, the master would not thereby have acquired any right to ship the property to any other place or to deliver it to any other person, except only as a mere custodian to preserve his lien. No such question, however, arises in this case; for Fitzhugh & Co. offered to pay the freight, and it was not for the purpose of preserving his lien for freight, or upon the ground of its non-payment, that the master delivered the property to the defendant. The defendant received the property from the master with notice both from the bills of lading and from the agent or clerk of the plaintiffs of their claims, and of the master's want of right, and without the assent of Fitzhugh & Co., and without any shadow of authority or excuse, retained the possession of the property and transported it from Oswego.

Though it afterwards came to the possession of the persons for whom it was designed at New-York and Albany, it is clear beyond all doubt that both the master of the propeller and the defendant had been guilty of an unlawful conversion of the property, for the whole value of which they might, in an action by the party entitled, have been made responsible. (*Syeds* v. *Hay*, 4 *Term R.*, 260.) That both the original taking of the property by the defendant and his refusal upon demand to deliver it to Fitzhugh & Co. were wrongful, is entirely clear. He could earn no freight by the carriage of the goods, nor be entitled to reimbursement for expenditures on account of them. (*Lempriere* v. *Pasley*, 2 *Term R.*, 486, 490.) The subsequent receipt of the goods from the defendant by the persons to whom they were destined is no bar to an action against him, nor any ratification of the delivery to him by the master. It could only go in mitigation of damages.

The next question relates to the right of the plaintiffs to maintain this action. It is an action in which the plaintiffs asked by their complaint to recover the possession of personal property, with damages for its taking and detention.

It appears from the evidence that Steel, the shipper of the property, was not the owner, but was possessed of it for the owners, with authority to forward it in the manner in which it was consigned by the bills of lading. He had liens upon the several parcels while in his possession, amounting together to $51.70. Previous to the actual shipment of the property, Steel had contracted with the plaintiffs that they should carry the property from Oswego to New-York and Albany to the respective consignees at those places at the lowest current rates for transportation. Upon the shipment of the property the bills of lading were signed in triplicate, one set being retained by the clerk of the vessel and the others delivered to Steel. The plaintiffs paid to Steel his charges above mentioned, and in considera tion thereof one set of the bills of lading was delivered to

them by him. The third set was sent by Steel to Strachan & Scott in New-York and to Cummings in Albany for the property consigned to them respectively. Fitzhugh & Co. were to receive the property at Oswego and transport it to New-York and Albany, and there collect the amount advanced by them and their compensation for carriage and other charges. As the property never came into the actual possession of the plaintiffs, it is necessary, in order to make out their right to maintain this action, or even an action for its conversion, to show that either the general or some special property in the goods was vested in them. When the property in question was in Steel's possession at Chicago, he had a special property in it by virtue of his lien. And as he had the possession for the purpose of forwarding, by authority of the owner, he might have carried the goods himself in his own vessel to Oswego or New-York and retained his lien, or he might have delivered them to the propeller to be carried upon the terms of receiving from them the amount of his lien, and in that case the right of lien for the charges so paid, they being actually due to Steel, would have passed to the carrier. Then it would seem to follow that Steel might have shipped the property to himself at Oswego and thereby retained a constructive possession of the property, the carriers in such case being but his servants, and the carriage of the goods from the one place to the other being subservient to the general purpose of the owners and in pursuance of Steel's authority from them. When, therefore, Steel put the property on board the propeller and took the bills of lading by which the property was deliverable to Fitzhugh & Co., at Oswego, and there delivered the bills to them upon and in consideration of their payment of his charges, the property at the time and until the delivery of the bill of lading remaining under his control, his special property became vested in the plaintiffs.

These positions are supported by the principles of the cases of *Sweet* v. *Pym* (1 *East,* 4), *McCombie* v. *Davies* (7 *East*), *Urquhart* v. *McIver* (4 *John.,* 116) and *Allen* v. *Williams* (12 *Pick.,* 297.) In *Sweet* v. *Pym,* the party having the lien had shipped the goods in pursuance of the owner's orders to be delivered to the owner. It was held that after the vessel sailed the shipper could not stop the goods upon the owner's insolvency, the custody having been changed by their delivery to the captain. In *McCombie* v. *Davis,* where a broker having the possession of his principal's property, and having a lien for a certain sum, had pledged the property to the defendant for money advanced to himself, and the defendant set up the broker's lien and claimed to retain under it, Lord ELLENBOROUGH said it was quite clear that a lien could not be transferred by the tortious act of the broker in pledging the principal's goods; and after consulting the other judges added, "that he would have it fully understood that his observations applied to a tortious transfer of the goods of the principal, by the broker undertaking to pledge them as his own, and not to the case of one who, intending to give a security to another to the extent of his lien, delivers over the actual possession of goods on which he has the lien to that other, with notice of his lien, and appoints that other as his servant to keep the possession of the goods for him, in which case he might preserve the lien." The principle of this last case is fully recognized in *Urquhart* v. *McIver.* *Allen* v. *Williams* shows that by the mere filling up of the bill of lading with the plaintiff's name, as consignee, the rights of the parties were not altered, and that it took effect only upon the negotiation of it with Fitzhugh & Co.

The motion for a nonsuit, upon the ground that the plaintiffs had shown no special property or sufficient interest in the goods to maintain the action, was properly denied. Indeed, the interests of commerce would seem to require a.

broader rule.    Inland navigation in this country requires so many trans-shipments of property, that if the consignee at an intermediate port of trans-shipment has not the right to claim, by virtue of the mere consignment to his care, the actual possession of the property, as against every one not claiming rightfully under the owner, the interest of owners must be greatly jeoparded in many cases.    Whether any such right can be maintained consistently with decided cases, is, to say the least, very doubtful; but no expression of opinion upon that question is necessary in this case.

The judge directed the jury to ascertain separately the amount of the profits which the plaintiffs would have made by the transportation of these goods from Oswego to Albany and New-York, and judgment was given for that amount besides the advances.    With reference to this point, the case is to be considered as if the property had come to the actual possession of the plaintiffs, for that we have already seen to be the legal effect of the acts of the parties.    In that case the plaintiffs, even as against the owner, having the possession, with a lien for advances, and having contracted to carry the property to its final destination, would have been entitled to receive their advances and the profits they would make upon the carriage of the goods from him upon a demand by him for redelivery.    That would have been the measure of the value of their special property. The restoration by the defendant of the property itself to the final consignees was received in evidence.    But for that restoration the plaintiffs would have had judgment for a return or the whole value, and are now to be taken to have waived judgment for a return or the whole value, and to have taken, instead, an assessment of the value of their special property.

The judgment should be modified so that the plaintiffs shall have judgment for a return, or the value of their

special property, including both the items before referred to.

The whole court concurring,

Ordered accordingly.