THE FIRST NATIONAL BANK OF CINCINNATI, Respondent, *v.* JOHN KELLY, Sheriff, etc., Appellant.

The indorsement and delivery of a bill of lading to a bank as collateral security for paper discounted, operates the same as a delivery of the goods; and the bank can hold them, so far as necessary, to pay the discounted paper as against the consignee or any other person.

The bank in such case, if not the absolute owner, stands in the position of a mortgagee in possession, and is not required to file the papers as a chattel mortgage.

(Argued September 25, 1873; decided January term, 1874.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, affirming a judgment in favor of plaintiff entered upon a verdict.

This action was brought in form to recover the possession of sixty-two bales of cotton.

Hiram Daniel, a dealer in cotton in the city of Cincinnati, doing business under the name of H. Daniel & Co., in the month of April, 1867, came to the plaintiff's bank with a bill of lading for the sixty-two bales of cotton consigned to Smith &

Dunning, of New York, to which was attached a sight draft on the consignees for $7,900, which the plaintiff, at the request of Daniel, cashed to enable him to pay for the cotton at the time of its consignment. The draft duly indorsed was, by the plaintiff, forwarded to the Fourth National Bank of New York and duly presented to Smith & Dunning, and they refused payment. The cotton was, thereupon, demanded of Smith & Dunning, on behalf of the plaintiff, who, in reply, said they would give it up on an order from Daniel. This order was subsequently procured, but did not produce the cotton. In the meantime Smith & Dunning commenced an action against Daniel on an alleged prior indebtedness and had the cotton consigned to them, attached by the appropriate process issued to the present defendant, as sheriff of New York. After the attachment was served, nothing further appears to have been done in that action. The sheriff was substantially indemnified, and Smith & Dunning sold the cotton and kept the proceeds. This action is brought in fact to recover the amount of the draft discounted by the plaintiff upon the security of the cotton consigned to Smith & Dunning, and that amount was recovered in the court below.

The verdict was for the amount of plaintiff's claim simply, and the judgment an absolute one therefor, instead of being in the alternative.

Further facts appear in the opinion.

*A. J. Vanderpoel* for the appellant. Plaintiff not having filed his papers according to the statute of Ohio, relative to the filing of chattel mortgages, the transaction was void as to creditors. (*Van Buskirk* v. *Warren*, 34 Barb., 457; *Bk. of Rochester* v. *Jones*, 4 N. Y., 497, 506; *City Bk.* v. *R. and W. R. R. Co.*, 44 id., 136, 139; *Parshall* v. *Eggart*, 52 Barb., 367, 372; *Shepardson* v. *Green*, 21 Wis., 539; *Fitzhugh* v. *Wyman*, 9 N. Y., 559.) The rule of damages in this case is not the highest price at the time of the trial; but if treated as a conversion, the value as at the time of the conversion. (*Mathews* v. *Coe*, 49 N. Y., 57, 62; *Scott* v. *Rogers*,

31 id., 676; *Markham* v. *Jaudon*, 41 id., 235; Sedg. on Dam. [4th ed.], note, pp. 554, 560.) A party cannot, directly or indirectly, impeach his own witness. (*Hunt* v. *Fish*, 4 Barb., 324; *People* v. *Safford*, 5 Den., 112, 118.) The court erred in allowing the witness Fanning to testify to conversations with Smith & Dunning. (*Hart* v. *Horn*, 2 Camp., 92; *Benjamin* v. *Smith*, 4 Wend., 332, 335; *Proctor* v. *Lainson*, 7 C. & P., 629; 2 Greenl. Ev., § 583.)

*Livingston K. Miller* for the respondent. The delivery of the bill of lading gave plaintiff an absolute title to the goods. (*Dows* v. *Greene*, 24 N. Y., 638, 643, 644; *Rowls* v. *Deshler*, 3 Keyes, 572; *Clark* v. *Mauran*, 3 Paige, 373; *Bk. of Rochester* v. *Jones*, 4 Comst., 497, 505; *City Bk.* v. *R., W. and O. R. R. Co.*, 44 N. Y., 136; *Cayuga Co. Bk.* v. *Daniels*, 47 id., 632; *M. Bk. of Chicago* v. *Wright*, 48 id., 1; *Ind. Nat. Bk.* v. *Colgate*, Alb. L. J., June 10, 1871, 390; *Bailey* v. *H. R. R. R. Co.*, 49 N. Y., 76, 77.)

REYNOLDS, C. We are invited to decide that the plaintiff's bank acquired no title to the cotton, for the reason that all the papers relating to the transaction were not filed with some town or village clerk in the State of Ohio, as a chattel mortgage.

The law has long been settled, that the discount of a draft, under the circumstances disclosed in this case, passed to the party advancing the money upon the faith of the bill of lading, without fraud; not only the legal title to the property, but, in the eye of the law, the transfer of the bill of lading was regarded as an actual delivery and an actual change of the possession. This has been so often decided that it is scarcely necessary to refer to authority, but a few will suffice. (*Bank of Rochester* v. *Jones*, 4 N. Y., 497; *Dows* v. *Greene*, 24 id., 638; *City Bank* v. *Rome, W. and O. R. R.*, 44 id., 136; *Cayuga Co. Bank* v. *Daniels*, 47 id., 632; *Marine Bank of Chicago* v. *Wright*, 48 id., 1; *Baily* v. *Hudson R. R. R.*, 49 id., 76, 77.) A further and full discussion of

the whole subject will be found in the very exhaustive notes to the great case of *Lickbarrow* v. *Mason*, in the seventh edition of Smith's Leading Cases, by Hare and Wallace (vol. 1, pp. 1147–1227). It is very clear, therefore, that this case, upon eminent authority, has no analogy to those requiring the filing of papers given as a mortgage security, without the actual delivery at the time of the property mortgaged and a continued change of the actual possession. Nothing more need be claimed here than that the transfer of the bill of lading, in good faith and upon a valuable consideration, was equal to the manual possession of the property it assumed to represent. In this respect it has been said that the bill of lading being only a symbol of the goods it represents, its possession confers "no more power over the property than would the possession of the property itself." Again it is said that "a bill of lading will pass the property upon a *bona fide* indorsement and delivery, when it is intended so to operate, in the same manner as a direct delivery of the goods themselves would do if so intended." (*Newsom* v. *Thornton*, 6 East, 41, *per* Ellenborough, Ch. J., and Grose, J.) And Erle, Ch. J., in *Meyerstein* v. *Barber* (L. R. [2 C. P.], 38–45), said: "While the goods are afloat the bill of lading represents them, and the indorsement and delivery of the bill of lading operate exactly the same as delivery of the goods themselves to the assignee, after the ship's arrival, would do." We are, therefore, obliged to assume that the plaintiff in this case had a good title to the cotton; so that it might hold it against the whole world, so far as it should be necessary to pay, with interest, the money advanced to Daniel upon the draft discounted when the cotton was consigned to Smith & Dunning.

The case of *The Bank of Rochester* v. *Jones* (4 N. Y., 497), which has been approved by all the subsequent cases decided by the court of last resort in this State, seems to be entirely decisive of this. In this, as in that case, the consignee was apparently the creditor of the consignor. The consignee, however, could only dispose of the goods by, in some proper

form, recognizing the right of the party advancing to reimbursement out of the proceeds of the goods consigned. If, without the due recognition of this right, the consignee should receive and dispose of the goods to his own use, he must respond as in an action for the wrongful conversion of the property. It is undoubtedly true that the plaintiff had not an indefeasible title to the cotton. When the debt was paid, Daniel, or those who succeeded him in his right, might reclaim it or its proceeds, or any surplus that should remain. In this sense alone could the transaction be regarded as a pledge or mortgage. In either case the result is the same, for the transfer of the bill of lading passed both title and, in in the law, actual possession, and Smith & Dunning could not convert the cotton to their own use without extinguishing the plaintiff's title by payment of its debt. It, therefore, is not of particular consequence what name is given to the transaction. If not the absolute owner, the plaintiff was a mortgagee in actual possession when the cotton was wrongfully converted by the defendant, and it was not necessary, under any law, to file the papers as a chattel mortgage.

It is supposed that some error was committed to the prejudice of the defendant on the question of the amount of damages, but after diligent search we have not been able to discover it. It is a very wholesome and well settled rule, that a party assigning error must be able to point it out with reasonable precision. It seems quite probable that the plaintiff recovered only the amount it had advanced upon the cotton, with interest and expenses of protest. This was the value of the plaintiff's interest in the cotton, and all that it really ought to recover of anybody. Upon the evidence the jury may have found, and probably did find, that the cotton at the time of its seizure exceeded in value that amount; and, if so, it is very clear that the defendant has no cause of complaint. If the jury were even guided by the lowest average market-price of low middling cotton in May, 1867, that amount, with interest from the time of the conversion, would exceed the amount of the verdict. It is, therefore, very clear that the evidence admit-

ted, under the objection of the defendant, that afterward cotton was sold in the New York market at higher figures, produced no injury to the defendant, and it may be very well doubted whether the form of the objection to the evidence was such as that it could be made available for any purpose. The great question of fact which appears to have been litigated on the trial was, whether the advance of the plaintiff was made upon the faith of the bill of lading and draft, and the jury found for the plaintiff on that issue, under instructions which we find unexceptionable. We find nothing in the charge to the jury upon the question of damages, save that, if they found that the advance was made on the strength of the bill of lading, then the plaintiff was " entitled to recover the amount claimed;" and this, we may assume, was the amount advanced, with interest. We are bound to indulge in every reasonable intendment in favor of supporting a verdict, and in this case we do no violence to the obvious fact in saying that the plaintiff only recovered the amount advanced, with interest and expenses of protest, and that the jury were of the opinion that the value of the cotton at the time of conversion was either equal to or greater than the damages awarded by the verdict.

It is objected, also, that the plaintiff was allowed to impeach its own witness, Daniel. Being a non-resident of the State, his testimony had been taken on behalf of the plaintiff by commission and duly returned, and upon which the plaintiff was prepared to go to trial. It happened, however, that on the day of trial, Daniel appeared personally in court, and of course, his testimony taken on commission, could not be read and he was orally examined, and his evidence was not equal to the plaintiff's expectation, nor in all respects in harmony with that previously given when taken on commission. It appeared on his oral examination, that he had before, in the same case, given evidence on commission. There was a question, whether an order of Daniel upon Smith & Dunning, dated the 8th of May, 1867, was, in fact, signed on that day or on the eleventh. In giving

his evidence on the commission, Daniel had sworn that the order was signed on or about its date ; but, in his oral evidence had said, it was, in fact, signed on the eleventh and dated back. I do not see how that question was at all material, in the view we take of the case ; for the rights of the plaintiff did not in any respect depend upon any order that Daniel could then make on Smith & Dunning for the delivery of the cotton to the plaintiff. But, the counsel for the plaintiff, assuming that the fact of the exact date of the order was material, asked Daniel whether he recollected, when examined as' a witness on commission, he was asked to testify to anything that would make for either party, and whether he recollected of mentioning the circumstances of the letter (or order) being dated back. To this the defendant objected, that the question was irrelevant and immaterial, but the evidence was received, and the witness stated that he did not recollect. It is enough to say, that the ground of objection on the trial did not, in the remotest degree, indicate the precise objection now taken, and for that reason, it may be overruled. The testimony of Daniel taken on the commission, was afterward given in evidence without objection. Both his oral and written evidence was submitted to the jury, and they doubtless, gave it all the consideration to which it was entitled.

We may fairly assume that Smith & Dunning are the real defendants in this action. They had the cotton and gave the sheriff an accountable receipt for it, and it has not been since heard from. They may have used it for their own benefit and it is not violent to assume that they did. Whether their declarations in relation to the transaction were proper evidence against the sheriff we need not consider. I think they were, but as no ground was assigned by counsel for the rejection of the evidence, we may safely assume that none could be given.

The form of the verdict, is not, perhaps, in exact accordance with the ordinary practice ; but no question seems to be made in regard to it. If it is desired by the defendant,

the judgment may be modified by directing a return of the cotton, with all the costs in all the courts, or the judgment below may be affirmed with costs. (*Fitzhugh* v. *Wiman*, 9 N. Y., 559.)

All concur.

Judgment affirmed.