PHILIP KACHURIN, Doing Business under the Name of KACHURIN DRUG COMPANY, Plaintiff, v. AMERICAN IRAQ SHIPPING COMPANY et al, Defendants.

Supreme Court, Trial Term, New York County, March 29, 1946.

*Jacob Shientag* for plaintiff.

*Neil P. Cullom* for defendants.

LEVEY, J. Plaintiff alleges four causes of action against the defendants American Iraq Shipping Company, Harry K. Barr and the Barr Shipping Company. The complaint was dismissed during trial as to the American Iraq Shipping Company. The remaining defendants are referred to, herein, as Barr.

The first and second causes of action, the former evidently in contract and the latter in conversion, seek damages as a result of the failure of Barr to issue so-called "carrier certificates" which would have enabled the plaintiff to gain immediate possession of certain merchandise, recited in a number of through bills of lading.

The third and fourth causes of action are limited only to the recovery of additional freight charges with respect to other shipments, which were paid by the plaintiff under protest. These charges were made by connecting on-carriers at ports of reshipment and, according to the plaintiff, were wholly unwarranted under the express terms of the bills of lading.

The bills of lading in all of the four causes of action specifically provided that the contracts thereby evidenced were to be governed by the law of England.

In connection with the first two causes of action, the testimony discloses, that in or about August, 1941, plaintiff purchased a quantity of sage and laurel leaves in Cyprus which the Pharaonic Mail Line, through its agent, undertook to transport to New York, at an agreed rate per ton. Through bills of lading were issued thereon, stamped " FREIGHT PREPAID ", as well as separate receipts indicating payment in full. At Port Said, Egypt, pursuant to the specific authorization in the through bills of lading, the merchandise was transferred to a steamer of another company, for shipment to New York, at which time the said company recomputed the freight charges on a cubic foot instead of a weight basis, theretofore employed, and charged an additional $4,200.

The American Eastern Shipping & Trading Co., Inc., as agent for the Pharaonic Mail Line, paid this sum, and advised Barr in New York to collect it from the plaintiff before issuing any " carrier certificates ".

The two issues are, first, the authority of the original carrier to impose the additional freight charges on the plaintiff; and second, the extent of the liability of Barr, admittedly not a party to any agreements or bills of lading.

With respect to the first issue, the through bills of lading given to the plaintiff by the Pharaonic Mail Line conclusively fixed the computation of freight charges upon weight, thus establishing the contractual basis for the transportation of the merchandise.

As stated in Carver on Carriage of Goods by Sea (8th ed., § 576) : " The amount of freight is generally to be determined by reference to some standard of weight or measurement specified in the contract."

The defendant, apparently to escape the effect of this, sought to prove a custom in shipping circles which would permit a connecting carrier, at a port of transshipment, to compute freight upon a totally different basis than originally agreed upon.

The difficulty with this position is twofold. Not only does the record fail to support the existence of any such custom, but even assuming its existence, any parol evidence to vary the terms of the bills of lading, upon which the plaintiff relied and for which he fully paid, would be contrary to the law of England, which governs the interpretation of such bills.

" Evidence, in other words, is admissible to explain that which is doubtful, but it is not admissible to contradict that which is plain." (10 Halsbury's Laws of England [2d ed.], Custom and Usages, p. 51; see, also, *The Turid,* 127 L. T. 42; *Gulf Line* v. *Laycock,* 18 Times L. R. 14; *Fitzhugh* v. *Wiman,* 9 N. Y. 559.)

Barr urges, in addition to custom and usage, several clauses of the through bills of lading as a defense. None of these, however, grant either to the carrier or to an on-carrier the authority to rewrite a contract for the purpose of changing the method of computation from one basis to another. They concern themselves solely with the privilege of checking or verifying the weights or measurements declared by the shipper.

The Pharaonic Mail Line simply did not have a contract with the plaintiff to carry his merchandise to New York for freight charges based on cubic feet. It could have very well insisted

at the outset upon such an agreement, but chose not to and expressly contracted upon a weight basis. The plaintiff properly insists on holding it to its bargain, and, in passing, it is fair to assume that had the on-carrying charges been less than those provided in the through bills of lading, the plaintiff would not have been credited with the difference.

There remains the question of Barr's liability. True, Barr was not a party to the original contract or to any subsequent agreement, but it was clearly established that he was an agent for the American Eastern Shipping & Trading Co., Inc., which in turn acted as an agent for the initial carrier. Barr, after plaintiff's first refusal to pay the additional charges, cabled his principal for instructions, upon receipt of which he again refused to surrender the documents except upon payment of the $4,200 or some adequate security therefor.

Barr is pictured by counsel as merely a " documentary agent ", and a disinterested intermediary. However, upon withholding the documents from the plaintiff after communicating with the American Eastern Shipping & Trading Co., Inc., he abandoned any status he may have possessed as a disinterested intermediary and identified himself unmistakably as an agent whose liability cannot be distinguished from that of the principal itself.

Barr's intent was immaterial, nor did it make any difference whether he was acting as an agent, an independent contractor, or a mere volunteer. In any capacity, once he assumed dominion over the property of another, hostile to the rights of the true owner, he was liable for his own tort, after being afforded, as an agent, the opportunity for reasonable inquiry to make his refusal absolute. (*Boyce* v. *Brockway,* 31 N. Y. 490; *Suzuki* v. *Small,* 214 App. Div. 541; *Monnot* v. *Ibert,* 33 Barb. 24; *People* v. *Bank of North America,* 75 N. Y. 547; *Beasley* v. *Baltimore & P. R. Co.,* 27 D. C. App. 595, Note, 6 L. R. A. [N. S.] 1048; 2 Am. Jur., § 328, p. 258; 20 A. L. R. 120; 99 A. L. R. 417; Restatement, Agency, §§ 343–344.)

In effect, Barr is in a position akin to that of a bailee, who, if he continues to act as such, does so at his own peril.

" A bailee, who sets up the title of another, does so at his peril. By retaining the goods, he makes himself a party to the controversy, and must stand or fall by his title. * * * a bailee has no other title except that which the bailor had. ' The defendant rested his right to retain the goods on the rights of the bailor, who had no rights whatever.' " (*Rogers* v. *Weir,* 34 N. Y. 463, 471.)

There is no merit to Barr's contention that the plaintiff should have paid the additional freight charges under protest, as he had done in several other instances. Plaintiff was not bound to submit to an improper exaction of fees or charges in order to obtain his own property. (*Rollins* v. *Bowman Cycle Co.,* 96 App. Div. 365; *Beasley* v. *Baltimore & P. R. Co., supra; Smith* v. *Hartog,* 23 Misc. 353; *Murr* v. *West Assurance Co.,* 50 App. Div. 4.)

Several remedies were available to the plaintiff to regain the merchandise covered by the bills of lading, but he was not compelled to pursue them. He could abandon the merchandise, as he did, from the moment of its conversion, and sue for its value. (*Pierpont* v. *Hoyt,* 260 N. Y. 26; *People* v. *Bank of North America,* 75 N. Y. 547, *supra.*)

Accordingly, as to the second cause of action, plaintiff is entitled to a judgment for the damages proved by him, to wit, the sum of $32,618.70, with interest thereon from June 5, 1942.

Since Barr was not a party to any contract or bill of lading, and therefore no contractual relationship existed between the plaintiff and the defendant, judgment is directed in favor of Barr dismissing the first cause of action.

A stipulation having been entered into that a determination of the rights of the respective parties in connection with the second cause of action was to apply to the third cause of action, because of their similarity, the plaintiff, therefore, is entitled to judgment in the sum of $970, representing the additional freight charges paid under protest, with interest on $690, from October 10, 1941, and on the balance from November 5, 1941.

As to the fourth cause of action, the bills of lading stipulated both weight and cubic foot measurements, and since uncontradicted testimony was given in behalf of defendant that errors in the original declarations were found which warranted the additional charges, judgment is directed in favor of Barr, dismissing the said fourth cause of action.

Judgment is also directed dismissing the complaint, with costs as to the defendant American Iraq Shipping Company.

Thirty days' stay of execution. Sixty days to make a case.