## BAILEY *v.* COLBY *& al.*

A bailee at will of personal property, where the bailment may be terminated at the pleasure of either party, and a bailee in whom a personal confidence is reposed, have no assignable interest in the thing bailed; and any sale by them passes no property, but puts an end to the bailment, and the bailor may bring trover or trespass against the purchaser who takes the property.

But a hirer of property for a term, or a bailee who has a lien upon the property, may have an assignable interest in it, and though his sale of the property absolutely will put an end to the bailment, yet his transfer of his interest merely, that is, of the property subject to the rights of the general owner, will convey his interest, and the purchaser will hold the property in the same manner as the seller did.

The defendant sold steers to Y., on condition that they should remain his property till Y. paid for them. If Y., before payment, sold the steers to the plaintiff, subject to the defendant's claim, the plaintiff acquired the same rights to the property as were held by Y., and on tender of the price the property became his.

THIS was an action of trespass *quare clausum*, and for taking, driving away and converting to his own use, two steers, alleged to be the property of the plaintiff.

The defendants pleaded the general issue severally, and filed several brief statements, in which they set forth that the steers were the property of the defendant, L. Colby, and that he, in his own right, and the other as his servant, entered the plaintiff's close peaceably, doing no damage, and drove away the steers.

The entry of the plaintiff's close, and taking and driving away the steers therefrom, were admitted by the defendants.

To prove that the steers were the property of L. Colby, the

defendants introduced evidence tending to prove that in the fall of 1850 said L. Colby sold the steers to one Young, on condition that the steers should remain his own property, till Young paid for them ; that Young paid $5.75 only, and then sold the steers, August 25, 1851, to the plaintiff, who had been frequently informed before he purchased them of Young, that Colby had a claim to the steers till they were paid for. And after the plaintiff purchased the steers of Young, he saw Colby once or twice, who informed him of his said claim to the steers, and on the 29th of said August, Young and the plaintiff, the plaintiff having provided himself with money, went to see Colby to settle up for the steers. At this time the dealings between Colby and Young were talked over, and the plaintiff, in the presence of Young, saying he had the money, offered to pay Colby what was due on the steers, which it appeared was the sum of $12.25 ; but that Colby refused to take it, unless he would pay him in addition what Young was owing him on all other matters between them, amounting to about $10. The plaintiff refused to do this, and the defendants, on the 10th of September following, entered the plaintiff's close, peaceably and quietly, and took and drove away the steers.

The court intimating to the defendants' counsel, that upon this evidence they should rule that the plaintiff was entitled to recover, a verdict was taken for him, by consent, for the value of the steers, and interest from the time of taking ; to be set aside, amended, or judgment rendered thereon, as the Supreme Judicial Court shall order.

*Tappan,* for the defendants.

Here was a sale upon condition from L. Colby to Young. Until the condition was performed, therefore, the property in the steers never passed to Young. Upon the sale of the steers to the plaintiff by Young, the bailment was at an end, and Colby could maintain trover against the plaintiff. If he could maintain trover, there would seem to be no good reason why he might not reclaim the property, doing no damage and committing no breach

of the peace. No formal demand was necessary, though the facts here constitute a sufficient demand. The plaintiff does not stand here in the light of an innocent purchaser. He had notice of the defendant's claim repeatedly, both before and after he undertook to purchase them of Young. Whatever he did, he did with his eyes open, and as it regards the defendant, he was a *wrong-doer*. Colby then owned the steers. When sold by Young to the plaintiff, they were still Colby's steers. The sale put an end to the bailment. After this was done, the defendant was at liberty to stand upon his rights, and treat the plaintiff as a *wrong-doer*. He was not obliged to receive the money of him.

And a mere offer by the plaintiff to pay what was due for the steers, would not reïnstate the parties to their original position before the fraudulent sale by Young to the plaintiff.

The plaintiff acted in defiance of the defendant's legal rights, with full knowledge of what those rights were. He has no cause to complain now, if the defendant avails himself of all the advantages the law gives him. *Sargent* v. *Gile*, 8 N. H. 325; *Luey* v. *Bundy*, 9 N. H. 301; *Foster* v. *Pettengill*, 12 N. H. 299.

*Burke*, for the plaintiff.

The contract between L. Colby and Young, as disclosed by the facts in the case, is not a bailment. It is what may be termed an inchoate sale.

In the case of a bailment, with the exception of the class called pawns or pledges, the bailor has a right to the redelivery of the article bailed, (or in the case of a mortum, goods in kind,) absolutely, after the termination of the contract. And in the exceptional class of pawns or pledges, he has a right to the redelivery of the article pawned or pledged, or the performance of the condition upon which the bailment was to terminate. Story on Bail., secs. 2 to 8 inclusive, and chap. 5.

Thus in the case of a bailment, *the title is always in the bailor*, and cannot be divested except with his consent, or on his neglect to perform the condition on which the article may have been pledged.

In cases of *inchoate sales*, the original owner of the property, or vendor, has no power to put an end to the contract, and to reclaim the article sold, without the consent of the vendee, or his neglect to perform the condition upon which the article was sold.

This is the radical and obvious distinction between *bailments* and *inchoate sales*.

Hence, that rule of the common law which terminates the bailment on the sale of the thing bailed by the bailee, does not apply to inchoate sales. On the contrary, the vendee acquires a right, which courts of law recognize and protect. He acquires a qualified title to the article sold, which may be more valuable and more important to protect, than that of the vendor. It is a class of contracts eminently favorable to the poor, and therefore deserving of the careful consideration and regard of tribunals of justice.

In contracts of this description, as in the case at bar, the thing which is the subject of sale may be an animal, whose value will increase with years : a part of the consideration may have been paid on the delivery ; and thus the real interest of the vendee may be much greater than that of the vendor. In such cases our courts have decided that the vendee has an interest, which they will recognize and protect, and that such sales shall not become absolutely void, by a sale of the article by the vendee ; but that in order to divest the title from the vendee, and enable the vendor to reclaim it, the latter shall first make demand upon the vendee, and give him a reasonable time for the full performance of the contract. He must, in some mode or other, *rescind the contract*, in order to revest the title in himself. *Davis* v. *Emery*, 11 N. H. 230.

It is not contended on the part of the plaintiff, that a sale by the original vendee, before the contract has been rescinded, will convey the absolute title to the thing sold. It will convey only the interest of the original vendee, subject to the rights of the vendor in the same. In short, it will convey only the interest of the original vendee, subject to the conditions of the original bargain. This interpretation of the law gives ample protection to all

parties. On the contrary the law, if it be as contended for by the defendants, instead of being a protection to the poor man, and a *bona fide* purchaser, would be a device to entrap him in difficulty and subject him to loss.

In the case at bar the contract was never rescinded by the defendant, L. Colby. He never made a demand upon Young for the fulfillment of the contract, or the restoration of the steers, nor upon the plaintiff. After the sale of the steers by Young to the plaintiff, he made no such demand upon either of them. He informed the plaintiff that he had a claim on the steers, and the plaintiff repaired to the place appointed, with money to remove and discharge that claim. Colby then made no objection to the sale of the cattle by Young to the plaintiff, nor any demand for their return, but insisted that the plaintiff should not only discharge the indebtedness of Young for the steers, but should pay all other sums alleged to be due from Young to him.

This conduct was in substance a ratification of the bargain between Young and the plaintiff, and of the sale of the cattle to the plaintiff. It was substantially a conditional sale by Young to the plaintiff, depending upon the discharge of Colby's claim on the steers.

The defendants are also liable for the trespass in breaking and entering the close of the plaintiff, which is confessed by them in their several defences.

BELL, J. It was held in the case of *Sargent* v. *Gile*, 8 N. H. 325, that if a bailee for hire for a limited period, sell the goods before the expiration of the term, the bailment is thereby ended, and the owner may maintain trover, if the vendee refuses to deliver them up on demand ; and it will not alter the case if the bailee had by his contract a right to purchase the goods within the term by paying a certain price. The case was carefully considered, and the numerous authorities cited fully sustain the conclusions of the court. Unless, then, it shall appear that there are exceptions to this general rule, to which the attention of the court was not called in that case, the rule then laid down must govern and conclude the case before us.

At common law a feoffment or other conveyance, which operated to transfer the fee of the estate, if made by a tenant, created a forfeiture of the entire interest of the tenant, and the lessor could at once bring his action, and recover the whole estate. 4 Kent Com. 82, 106. But a conveyance by grant or other form of conveyance, the legal operation of which was merely to transfer to the purchaser the interest of the tenant, did not operate as a forfeiture, because it did not tend to divest or in any way injuriously affect the estate of the landlord. 4 Kent Com. 83 ; (Touchstone 105.) To the rule last stated, however, there is an exception in the case of a tenant at will, for he has no assignable interest, and any conveyance of the property by such a tenant has the effect to put an end to the tenant's estate, while his grantee acquires no right whatever. 4 Kent Com. 114 ; 2 Black. Com. 146.

These distinctions in the case of real estate seem to us founded in the nature of things, and they are capable of application, and suitable to be applied, in the case of personal property, where the circumstances are substantially similar, and no strong reasons of public policy or public convenience forbid their application.

In the great mass of bailments the reason which governs in the case of estates at will would be found to apply. The nature of the bailment, the objects to be effected by it, forbid that the bailee should have, or should be regarded as having any assignable interest. Wherever this should be found to be the case, any attempt by the bailee to assign any interest in the property bailed, would be regarded as putting an end to the bailment on the part of the bailee, and the assignee would acquire no interest by the assignment, and would be liable to the action of the bailor, as a mere stranger would be. Such are all the cases where the bailment can properly be regarded as a personal trust in the bailee, and such in general are all those cases where the bailment is at will, that is, during the pleasure of both the parties.

But there is a large class of bailments, where the bailment is accompanied with other contracts or stipulations which affect its

character, and give to the bailee other rights, not incident to a simple bailment, and where there is no personal confidence, and none of the characters of an estate at will, and where it would be entirely consistent with the analogies existing in the case of real estate, to hold that the bailee has an assignable interest, which may be transferred to a third person, and where such an assignment, upon the common principles governing the courts, would be enforced and protected as between the parties, and as against all persons whose interests are not injuriously affected by the transfer.

Of the cases which present themselves as falling within this class, would be the case of a pledge, or pawn, where there is ordinarily nothing like personal confidence, and the contract is in no sense determinable at the pleasure of a party, but the bailee has an interest, or, as it might be said, a *quasi* estate in the goods till they shall be redeemed.

In the same class would fall all the various cases of lien, where the bailee has a right, as against the bailor, to insist upon the possession of the property, until the lien is duly discharged by payment or the performance of other conditions.

In all cases of this character it might well be contended that a pledge is an incident of the debt, and passes with it upon its transfer. *Southerin* v. *Mendum*, 5 N. H. 420 ; *Whittemore* v. *Gibbs*, 4 Foster 484.

But the law seems to be well settled in the case of the pawn, that the pawnee may sell and assign all his interest in the pawn, or he may convey the same interest conditionally by way of pawn to another person, without in either case destroying or invalidating his security. *Moses* v. *Canham*, Owen. 123 ; *Ratcliffe* v. *Davis*, 1 Buls. 29 ; S. C. Yel. 178 ; Cro. Ja. 244 ; *Jackson*, J., in *Jarvis* v. *Rogers*, 15 Mass. 408, 389 ; *Mann* v. *Shipner*, 2 East 523 ; *McComb* v. *Davis*, 7 East 6, 7 ; *Goss* v. *Emerson*, 3 Foster 42 ; *Cross on Lien* 72.

But if the pledgee should undertake to pledge the property (not being negotiable securities,) for a debt beyond his own, or to make a transfer thereof to his own creditor, as if he was ab-

solute owner, it is clear that in such case he would be guilty of a breach of trust, and his creditor would acquire no title, (beyond that held by the pawnee, says Story Bailm. 215.) It would admit of controversy whether the creditor could retain the pledge till the original debt was discharged, and whether the owner might not recover the pledge, as if the case was a naked tort without any right in the first pledgee.

In the case of liens it is settled that a factor, having a lien on goods consigned to him for sale, for advances, or for a general balance, has no right to pledge the goods generally, and if he does he conveys no right to the pledgee. But it is admitted that the factor has a right to assign or deliver over the goods as a pledge or security to the extent of his own lien thereon, if he avowedly confines his assignment or pledge to that, and does not exceed his interest. *Mann* v. *Shipner*, 2 East 523–9 ; *McComb* v. *Davis*, 7 East 6, 7 ; *Kenkein* v. *Wilson*, 4 B. & A. 443 ; 1 Bell Com. 483 ; 2 Bell Com. 95 ; *Urquhart* v. *McIver*, 4 Johns. 103 ; 2 Kent Com. 626 ; Story Bail. 216 ; *Whitwell* v. *Wells*, 24 Pick. 31.

The case of letting to hire may fall in either of the two classes into which, for our present purpose, we have divided bailments. Such a letting may be at will, or it may partake of the character of a license, or personal confidence, in either of which cases the hirer will have no assignable interest. But it may also be a letting for a fixed time, and without restriction or limitation from which any personal confidence may be inferred. It may be in terms to the party or his assigns, or the character of the use may be such as necessarily to imply that the property may be assigned. And in every such case the hirer may be deemed to have an assignable interest. Thus, a party may lease his farm for years, with the stock and tools upon it. The whole lease, it can hardly be doubted, may be assigned. A party may let furnished lodgings for a term ; the lessee has an assignable interest in the furniture. A sheriff, who seizes such *interest* on execution is liable to the lessor neither in trover nor trespass. *Putnam* v. *Willey*, 8 Johns. 432–5 ; *Ward* v. *McAuley*, 4 D. & E. 489 ; *Gordon* v. *Harper*, 7 D. & E. 9 ; Edw.

Bail. 314. So a party who should lease his livery stable, with his stock of horses and carriages, for a term of years, could hardly complain if the lessee should assign his interest, unless some restriction was introduced in the lease. And the ship-owner who should let his vessel for a year, could hardly object if the charterer should assign his interest to another pending the term.

Applying these principles in the present case, the result would be, that as the interest of Young was not a simple bailment, terminable at the pleasure of the parties, and as it rested on no personal confidence, but was connected with a contract, which gave him a right to keep the steers and use them till he paid for them, if he did that in a reasonable time ; and to the absolute title to the property whenever such payment should be made, he had an assignable interest in the steers, a right to sell his interest, or, in other words, a right to sell the property, subject to the claim of Colby, the defendant. If his sale was of his interest only, he had done no wrong, and his assignee, the plaintiff, was entitled to hold the property as he held it by his contract ; and Colby had no right to resume the property from Bailey, more than he had from Young himself, until the reasonable time for payment had passed, and until after he had requested payment without success.

When Bailey, the plaintiff, went with Young to Colby, before any demand made for payment, and tendered him the balance due for the steers, the property became at once vested in Bailey, and Colby had no longer any right to interfere with it, and he was a trespasser, as any stranger would be, for taking it away. Colby had no right to ask payment of any other claim he had against Young ; and Bailey, to perfect his title, was bound only to pay the amount Colby had agreed to take for the steers.

But if the sale by Young was a sale of an absolute title to the steers, in disregard of the claim of Colby, Colby might treat the contract with Young as violated, and the bailment at an end, and resume the property at once, doing no unnecessary damage and using no violence, without liability for any damage for the

taking, or for any entry on land of Young or Bailey to obtain the possession of it.

The cases on this subject are none of them inconsistent with our views, so far as we have discovered. The case of *Sanborn* v. *Coleman*, 6 N. H. 14, was of the hiring of a mare for four weeks, and *a sale absolute* to the defendant a few days after. It was held that the sale was wrongful, and a conversion, which authorized the plaintiff to consider the contract at an end, and to claim possession of the mare wherever she could be found.

In *Sargent* v. *Gile*, before cited, the plaintiffs delivered furniture to one Wilson upon a contract that he should keep it six months, and if in that time he paid for it, he was to have it; otherwise he was to pay an agreed price for the use of it. Wilson sold and delivered the furniture to the defendants, *who knew nothing of the contract, but bought the property supposing it to be his,* and the bailment was ended, and the bailor might recover the goods in trover. The case of *Lovejoy* v. *Jones*, 10 Foster 165, was of a similar character.

In *Vincent* v. *Cornell*, 13 Pick. 294, oxen were sold to be returned on a fixed day, unless a certain sum was paid. The buyer sold the oxen, and the court held that the original buyer had a right to dispose of the possession with his right, such as it was, and the sale did not terminate the bailment.

In *Loeschman* v. *Machin*, 2 Stark. 311, where the hirer of a piano sent it to an auction to be sold, it was held a conversion; and it is apparent the transfer could not have been limited to the hirer's interest merely. *Wilkinson* v. *King*, 2 Camp. 335, presents the same point, and *Samuel* v. *Morris*, 6 C. & P. 620; *Emerson* v. *Fisk*, 6 Greenl. 200, and *Galvin* v. *Bacon*, 2 Fairf. 28.

The case of *Davis* v. *Emery*, 11 N. H. 30, tends to support our view of the law. It was there held that when a cow was taken, under a contract that she was to remain the plaintiff's property till paid for, and she was bailed by the buyer to another person to keep, no action could be maintained against such bailee, till demand of the price, and of the animal. And the case of *Nash* v. *Mosher*, 19 Wend. 431, fully sustains it; where it was held

generally, that a party having a lien upon goods may transfer the possession, subject to the lien, to a third person, who may lawfully hold the property until the lien is paid; but if the transferee sells the goods, the owner is remitted to his original rights, freed from the lien, and may bring trover against him.

Upon the facts reported in the case, which was evidently tried without any distinct reference to the distinction we make, it seems most probable that the sale was a rightful sale, made with the knowledge on both sides of Colby's interest, and subject to the performance of the contract with him. This was the view of the court upon the trial, and the verdict was taken by consent upon an intimation of that opinion.

It was a question proper for the jury whether the sale was of Young's interest merely; but that does not seem to have been made a question. Unless it is supposed there is room for a controversy upon this fact, there must be

*Judgment on the verdict.*